This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MARTIN BENAVIDEZ,**

Petitioner-Appellee,

v.                                                                              **NO. 30,267**

**ARLENE PINO f/k/a**
**ARLENE BENAVIDEZ**,

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**J.C. Robinson, District Judge**

Deschamps & Kortemeier Law Offices, P.C.
Lee Deschamps
Socorro, NM

for Appellee

Tibo J. Chavez, Jr.
Belen, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Mother appeals from the final order modifying timesharing and child support, awarding Father a judgment for child support arrears, and awarding Father attorney fees. Mother raises three issues on appeal, contending that the district court committed reversible error by: (1) entering a sua sponte pre-trial order on May 15, 2009, changing timesharing of the children; (2) granting a judgment to Father for child support arrears in the amount of $13,491; and (3) granting judgment to Father in the amount of $10,000 for attorney fees. We affirm.

**DISCUSSION**

The final decree of dissolution of marriage was filed on July 15, 2005, which approved and adopted the marital settlement agreement of the parties "as the Order of the Court." The marital settlement agreement provided for guideline child support and directed that the existing parenting plan "will control until further Order of the Court." The marital settlement agreement also provided that "In the event either of the parties desire, a 706 evaluation will be made of the parties and the children and the costs will be equally divided. After the 706 evaluation is done, the parties shall follow the recommendations until and unless the Court modifies the same."

On July 19, 2006, after hearing Father's motion for an order to show cause, which alleged that Mother was not complying with the timesharing plan, the district court (Judge Sweazea) ordered a change to the timesharing, and a Rule 11-706 NMRA

2

evaluation to determine a permanent timesharing plan. Dr. Zieman was appointed to perform the evaluation and make appropriate recommendations to the court. The next month, on August 1, 2006, Mother filed a motion to reconsider, asking that the district court "dismiss" the July 19, 2006 order for a Rule 706 evaluation. Father's response to Mother's motion to reconsider, together with a motion to modify child custody, visitation and child support, and a motion for an order to show cause was filed on November 28, 2006. Concerning child support, Father asked that child support "be modified in accordance with the New Mexico Child Support Guidelines consistent with the current income of the parties."

After further conflicts and hearings, the district court (Judge Robinson) appointed Dr. Zieman as a parenting coordinator on January 12, 2007, "for the purpose of reducing conflict between the parents and of insuring the best opportunity for the minor children to develop in the healthiest way possible under the circumstances." The court noted a need for the parties to develop a revised parenting plan in sufficient detail regarding custody, visitation and/or timesharing. In this regard, the parties were ordered to abide by any "written and oral directives and decisions of the Parenting Coordinator regarding parenting issues, the Parenting Plan, custody, visitation or timesharing, unless modified by the Court."

On November 28, 2007, Mother filed a "Motion to Relocate, To Modify Child

Support, To Amend the Wage Withholding Order and To Appoint Dr. Miller as Rule 11-706 Custody Evaluator." Therein, in material part, Mother alleged that a material and substantial change in circumstances warranted a modification of Father's child support obligation and that the circumstances warranted the appointment of a custody evaluator pursuant to Rule 11-706. Mother specifically requested that Dr. Miller be appointed.

Following a hearing on January 30, 2008, the district court entered its order on April 16, 2008. The district court appointed Dr. Miller as its Rule 11-706 expert to perform an evaluation and make recommendations concerning legal custody and appropriate timesharing arrangements. The district court also specifically ordered, "The parties shall abide by the recommendations of Dr. Theresa Miller until further order of the Court." Dr. Miller made her custody evaluation recommendations in a report dated December 9, 2008. Therein, she recommended that timesharing be changed to 50/50, with the parents continuing to share joint legal custody of the children.

On March 3, 2009, Father filed a motion asking that the district court enter its order formally adopting Dr. Miller's recommendations, which was attached to the motion. Mother's response to the motion admitted that Dr. Miller had completed her custody evaluation and recommendations to the court on December 9, 2008 and that

4

the evaluation and report was attached to Father's motion. Father again asked (as he had in the motion filed on November 28, 2006) that child support be modified to an amount consistent with the statutory guidelines in a motion filed on March 20, 2009. In this motion, Father alleged that Mother was continuing to take credit for day care expenses she did not pay ($70 per month), and for health insurance premiums she did not pay ($160 per month), and that child support should be determined on the basis of a shared responsibility worksheet, since the 706 expert, Dr. Miller, had recommended equal timesharing. Father contended these constituted a material change in circumstances, which warranted modifying the existing child support order.

The district court held a status conference on March 12, 2009, and set a hearing to consider all pending matters for June 2, 2009. On May 15, 2009, the district court entered an order sua sponte vacating the June 2, 2009 hearing, due to a court scheduling conflict. Moreover, the district court made a finding that "a hearing on whether there is going to be an adoption of the 706 Witness Recommendations is not necessary because there are no new facts to develop," and adopted Dr. Miller's recommendations as the order of the court. The court ordered the parties to advise the court by letter what they had done to effectuate Dr. Miller's recommendations since March 2009, and set the matter for a review hearing to be held on January 11, 2010. The court noted that the motion to modify child support remained outstanding and

directed the parties to exchange financial information.

Mother then filed a motion to enforce child support, for sanctions, and to modify timesharing on August 19, 2009. Mother alleged that Father had not paid child support since July 30, 2009, and that the 50/50 timesharing "is not practical and is not in the best interests of the minor children" because the children were spending time with their stepmother while Father worked. Father responded on November 23, 2009.

Following a status conference on September 17, 2009, an evidentiary hearing was held on November 10, 2009. This hearing resulted in the final order, filed on January 13, 2010, from which Mother appeals.

**The May 15, 2009 Order**

Mother contends that the May 15, 2009 sua sponte order was erroneously entered without an evidentiary hearing, testimony, or findings regarding the best interests of the children or a change in circumstances to justify a modification of custody. Mother further contends that by adopting Dr. Miller's Rule 11-706 report and recommendations without taking testimony or hearing her objections, the district court did not hold Father to carrying his burden of proof to modify joint custody, precluded her from exercising her right to testify about custody of the children, and precluded her from exercising her right to cross examine Dr. Miller as provided in

6

Rule 11-706. We disagree.

The main point of the May 15, 2009 order was to vacate the hearing on all pending motions set for June 2, 2009, due to a court scheduling conflict and to reschedule the case for a review hearing on January 11, 2010. Moreover, the order indicates that the district court considered Dr. Miller's Rule 11-706 recommendations, as well as Mother's objections thereto, and adopted the recommendations. In addition, the district court directed the parties to comply and advise, in writing, what they had done to effectuate compliance since March 2009, and set the matter for a review hearing on January 11, 2010. Given that the district court determined that there were no new facts to develop with regard to adopting Dr. Miller's Rule 11-706 recommendations, and the necessity to reschedule the hearing set for June 2 and arrange how matters should proceed between the parties in the interim pending the rescheduled review hearing, we cannot say that the district court abused its discretion in entering the May 15, 2009 sua sponte order.

Moreover, contrary to Mother's assertions, the May 15, 2009 order did not order a change of legal custody. Dr. Miller's Rule 11-706 report and recommendations specifically states, that Mother and Father "should continue to share joint legal custody," and recommends 50/50 timesharing. The May 15, 2009 sua sponte order then simply adopts Dr. Miller's Rule 11-706 report concerning

7

timesharing, and makes no order relating to legal custody. Timesharing is not legal custody, and Mother fails to point to any authority stating otherwise. *See* NMSA 1978, § 40-4-9.1(F) (1999) (stating that when joint custody is awarded, a parenting plan shall be adopted which "shall include a division of a child's time and care into periods of responsibility for each parent"); *Jaramillo v. Jaramillo*, 113 N.M. 57, 62, 823 P.2d 299, 304 (1991) (stating that the designation of one parent as "primary physical custodian" under a court-approved parenting plan in a joint custody situation "simply means that the child resides with that parent more than half the time"). In other words, Mother's status as having joint legal custody of her children was not changed by the May 15, 2009 order.

Finally, Mother overlooks the fact that the district court held a full evidentiary hearing on November 10, 2009, at which Mother was given an opportunity to present all her evidence and arguments against 50/50 timesharing. After hearing and considering all of the evidence at this hearing, the final order was entered, which once again directed 50/50 timesharing. Further, the district court made a change to Dr. Miller's report and recommendations. Whereas Dr. Miller recommended that only one parent attend the children's extracurricular activities at a time, the district court directed that both parents be allowed to attend the children's respective school, religious, and extracurricular activities. Finally, we note that the district court made

several findings in support of the final order, changing timesharing, and none of these findings are challenged by Mother on appeal.

In summary, there appears to be no basis to support Mother's contention on appeal that the May 15, 2009 sua sponte order inappropriately made major, permanent modifications to the parties' timesharing arrangements without a hearing, testimony, evidence, or findings. Rather, the order addressed matters pending a review hearing that was necessarily rescheduled due to a district court scheduling conflict, and Mother was given a full and fair opportunity to present her evidence and arguments against 50/50 timesharing. We affirm the district court's sua sponte order filed on May 15, 2009.

**Child Support Award**

Mother contends the retroactive award of child support in the final order must be set aside because it is based on 50/50 timesharing, which was improper, and because the award is not supported by substantial evidence. Again, we disagree. Having already concluded that the order for 50/50 timesharing was not erroneous, we turn to Mother's substantial evidence argument.

We review the setting of child support orders for abuse of discretion. *See Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16. We will find that a district court has abused its discretion "when it applies an incorrect standard, incorrect

9

substantive law, or its discretionary decision is premised on a misapprehension of the law." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (internal quotation marks and citation omitted). We review the questions of law presented in Mother's appeal de novo. *Id.*

First, the modifications set forth in the final order appropriately date back to December 2006, based on Father's motion to modify child support filed on November 28, 2006. *See, e.g.*, *Montoya v. Montoya*, 95 N.M. 189, 190, 619 P.2d 1233, 1234 (1980) (stating that the general rule is "that *the applicable date for any modification is the date of filing of the petition or pleading rather than the date of hearing* . . . unless there are unusual circumstances").

Second, contrary to Mother's assertions, the final order contains a detailed schedule of child support as modified by the district court, showing for specific monthly time periods from December 2006 through the present, the child support Father owed, the amount of child support Father paid, and the excess amount he paid. These amounts as set forth on the schedule total $13,491 in overpaid child support due to Father from Mother. The overpayments were calculated based on the district court's findings that from December 2006 to June 2009, Mother had accepted child support based on calculations that considered that Mother was making certain insurance and day care payments that she had not been making for about three years.

Thus, the district court determined that the excess payments should be returned to Father in the amount of $13,491. Finally, we note that the district court specifically attached a detailed worksheet to the final order that calculates the child support owed by Father to Mother taking into account the parties' then-current gross income and applicable child care-related expenses. Moreover, Mother does not point us to any evidence that the figures used by the district court have no basis in the evidence. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

Concluding that the district court did not abuse its discretion, we affirm the final order calculating the overpayments Father made since December 2006 and establishing the new child support amounts based on the parties' then-current gross incomes and child care-related expenses.

**Attorney Fees**

Mother argues that the $10,000 award of attorney fees to Father was an abuse of discretion because she was in effect punished for exercising her right to be heard on her objections to the Rule 11-706 recommendations of Dr. Miller, her right to be heard regarding custody and the best interests of the children, and the award failed to account for the substantial disparity of the parties. We are not persuaded that the

11

district court abused its discretion under the circumstances of this case.

NMSA 1978, Section 40-4-7(A) (1997) allows the district court to "make an order, relative to the expenses of the [domestic relations] proceeding, as will ensure either party an efficient preparation and presentation of his [or her] case." *See also Herrera v. Herrera*, 1999-NMCA-034, ¶ 19, 126 N.M. 705, 974 P.2d 675 ("Authority to award attorney[] fees in domestic relations cases is provided by New Mexico statutory law."). "Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom." *Michelson v. Michelson*, 89 N.M. 282, 289-90, 551 P.2d 638, 645-46 (1976); *see Gomez v. Gomez*, 119 N.M. 755, 759, 895 P.2d 277, 281 (Ct. App. 1995) (listing factors to be considered in determining whether to award attorney fees, including the economic disparity between the parties), *superseded by statute on other grounds as stated in Erickson v. Erickson*, 1999-NMCA-056, ¶ 25, 127 N.M. 140, 978 P.2d 347. We review the district court's award of attorney fees for an abuse of discretion. *See Fitzgerald v. Fitzgerald*, 70 N.M. 11, 15, 369 P.2d 398, 400 (1962).

In this case, the district court judge (Judge Robinson) presided since being designated by the Supreme Court on October 31, 2006. In awarding attorney fees to

Father, the district court made the following findings: (1) Mother refused to abide by and made objections to the final mediated parenting plan agreement after it was entered; (2) Mother objected to a special commissioner's finding that it was Mother who had committed an act of domestic violence rather than Father or his wife, as Mother had alleged; (3) Mother refused to accept the district court judge's decision to deny her objections regarding the special commissioner's domestic violence findings; (4) Mother raised the same unfounded domestic violence allegations, to which Father was required to respond and defend, for a third time; (5) Mother continued to accept child support payments from Father in the amount that was calculated based on Mother's payment of insurance premiums and day care expenses when she had no longer been making these payments for a period of three years; and (6) Mother filed a motion to reduce Father's visitation when the district court had, after considering her objections, adopted the Rule 11-706 expert's findings and recommendations without any showing that such a reduction would be in the best interests of the children.

These findings are supported by substantial evidence presented in the record proper and at the hearing prior to the filing of the final order, and they support the district court's conclusions that Father was entitled to a portion of his attorney fees in the amount of $10,000, because (a) "many, if not most, of the proceedings have been

13

initiated and pursued because [Mother] refused to accept the rulings and findings and determinations made;" (b) "[Mother's] failure to act in good faith resulted in protracted, unnecessary and unsuccessful litigation;" and (c) "[a] substantial portion of [Father's] attorney[] fees were caused as a direct consequence of [Mother's] lack of good faith in this cause of action."

In addition, we hold that the district court did not abuse its discretion in awarding $10,000 to Father in attorney fees since 2004, because this amount is related to the attorney fees Father incurred as a result of Mother's failure, throughout the litigation, to accept the district court's rulings, Mother's bringing of what was determined to be unfounded domestic violence accusations against Father that he was required to defend against, and Mother's unwillingness to abide by the mediated agreements she made or to accept the recommendations of the Rule 11-706 expert that were duly adopted by the district court. Moreover, the amount of attorney fees awarded goes directly to Father's "efficient preparation and presentation of his case," including his defense to Mother's apparently unfounded domestic violence allegations, and the necessity of Father's filing of motions for the purpose of requiring Mother to do what she was already required to do under the orders of the district court. In making a partial award of attorney fees to Father, moreover, the district court weighed Mother's demonstrated willingness to engage in unnecessary litigation

that resulted in delay about matters already agreed to or litigated, against Mother's income and her ability to pay such amount. Finally, as such, the amount of attorney fees awarded addresses the "nature and character of the controversy" in this particular case and "the benefits derived therefrom" by compensating Father for having to pay his attorney to defend against unfounded accusations and to enforce the district court's rulings.

Under the circumstances of this case, we cannot say that the district court erred in making a partial award of attorney fees to Father in the amount of $10,000.

**CONCLUSION**

We affirm the district court's rulings in this case and the final order.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**

15